

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00302-CR

———————————————————

KRISTI MALOY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F21-846-211

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Kristi Maloy was convicted of murdering her sister, Felicia.[1] *See* Tex. Penal Code Ann. § 19.02(b)(1), (b)(2). In two appellate issues, Maloy challenges the sufficiency of the evidence to support (1) her intent to kill Felicia and (2) her 50-year sentence. We will affirm.

## I. Background

At the time of the murder, Maloy was relying on Felicia for multiple things: Felicia and her husband Felix were allowing Maloy to live with them, and Felicia was paying for Maloy's cell-phone plan.

## A. Murder

On the day of the incident, Maloy got into an argument with Felicia about changes to her cell-phone plan, and when Maloy began to threaten Felicia, Felix intervened. According to Felix, Maloy "jumped all on [Felix and] started scratching [him] in [the] face," so he pushed her onto the couch.[2] Felicia—attempting to defuse the situation—asked Felix to step outside so she could talk to her sister. When Felix did so, Maloy locked the door behind him, then she stabbed Felicia multiple times

---

[1]Given the familial relationship between Maloy and the complainant (Felicia) and between the complainant and one of the witnesses (Felix), we use first names to refer to the complainant and the relevant witness.

[2]At trial, Felix testified that he placed—not pushed—Maloy onto the couch. But multiple law enforcement officers testified that, on the night of the incident, Felix told them he had pushed Maloy onto the couch.

with a kitchen knife. Felicia died later that night, and her autopsy confirmed the cause of death to be multiple "sharp force injuries" to the thigh, wrist, and arms,[3] with one wound hitting Felicia's femoral vein.[4]

The State indicted Maloy for murdering Felicia under two alternative theories: (1) "intentionally or knowingly caus[ing her] death"; and (2) "with [the] intent to cause serious bodily injury to [Felicia], . . . commit[ting] an act clearly dangerous to human life that caused [her] death . . . [namely,] cutting or stabbing [her] with a knife." *See id.*

## B. Trial

At trial, the jury heard testimony from numerous witnesses, including Felix, a neighbor, Felicia's emergency-room doctor, the medical examiner, and more than ten law enforcement officials involved in the case. Maloy used her cross-examinations of these witnesses to argue that she had not known that the stab wounds would kill Felicia; she elicited testimony that she had told the police that she had "cut her sister like her dad cut her mom" and that, as Felicia lay dying, Maloy had insisted that Felicia was "just playing dead."

Maloy also used her cross-examinations to highlight her mental deficiencies. Felix confirmed that Maloy behaved, thought, and communicated "like a small

---

[3]The medical examiner counted seven knife wounds.

[4]The medical examiner explained that the left femoral vein—which was "perforated" when Maloy stabbed Felicia in the thigh—was a "major vessel[]" that "returns blood flow from [the] lower [left] extremity," so "it [wa]s significant . . . in the terms of blood loss."

child,"[5] and Maloy claimed that such deficiencies impaired her ability to control herself or to understand the deadliness of her actions. But Felix confirmed that, even in her childlike state, Maloy knew knives were dangerous.

The jury found that Maloy had murdered her sister as alleged in the indictment and that she had used or exhibited a deadly weapon—a knife—when she did so. *See id.* After hearing punishment evidence and finding that Maloy had two prior felony convictions, the jury assessed her punishment at 50 years' confinement.[6] *See id.* §§ 12.42(d), 19.02(c).

## II. Discussion

Both of Maloy's appellate issues challenge the sufficiency of the evidence. She claims that (1) there was insufficient evidence that she intentionally or knowingly killed her sister and (2) there was insufficient evidence to support her 50-year sentence.

---

[5]Maloy did not plead insanity, nor does she raise the issue on appeal. *See* Tex. Penal Code Ann. § 8.01(a) (establishing affirmative defense of insanity if "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong"). And the record reflects that, before trial, Maloy was found by a psychologist to be competent to stand trial. *See generally* Tex. Code Crim. Proc. Ann. ch. 46B.

[6]Due to Maloy's two prior felony convictions, her range of punishment was enhanced, and she faced between 25 years and life in prison. *See* Tex. Penal Code Ann. §§ 12.32, 12.42(d), 19.02(c).

## A. Conviction

Maloy first attacks the evidentiary sufficiency of the jury's implied finding that she possessed the mens rea required for murder. In analyzing this issue, we view the evidence in the light most favorable to the verdict to determine whether any rational juror could have found this essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

Here, the jury's implied mens rea finding was twofold; it returned a general verdict after being authorized to convict Maloy of murder if it found either (1) that she intentionally or knowingly caused Felicia's death or (2) that she intentionally caused Felicia serious bodily injury while committing an act clearly dangerous to human life. *See* Tex. Penal Code Ann. § 19.02(b)(1), (b)(2). And "[w]hen the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge." *Anderson*, 416 S.W.3d at 889; *see Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Bryant v. State*, No. 02-18-00177-CR, 2019 WL 3334424, at *3 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication).

Yet, Maloy's appellate argument focuses almost exclusively on the State's first theory of murder—that she intentionally or knowingly killed Felicia. Maloy dedicates less than two sentences of her brief to the second theory of murder—that she

5

intended to cause Felicia serious bodily injury while committing an act clearly dangerous to human life. *See* Tex. Penal Code Ann. § 19.02(b)(1), (b)(2). As to Maloy's two sentences mentioning the second murder theory, they merely offhandedly reference it without any citations to relevant case law or to the record. *Cf.* Tex. R. App. P. 38.1(i) (requiring an appellant's brief to present an argument "for the contentions made, with appropriate citations to authorities and to the record"). Maloy has thus failed to adequately brief a challenge to the State's second theory of murder, and she presents no basis for our review of that theory. *See id.*; *Bohannan v. State*, 546 S.W.3d 166, 179–80 (Tex. Crim. App. 2017); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011). We can therefore affirm Maloy's murder conviction on this second, unchallenged theory of murder without the need to analyze the issue further. *See Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991) (rejecting sufficiency issue without further analysis when defendant challenged only one of multiple alternative theories submitted to jury); *Simmons v. State*, Nos. 2-05-172-CR, 2-05-173-CR, 2006 WL 2034260, at *5 (Tex. App.—Fort Worth July 20, 2006, pet. ref'd) (mem. op., not designated for publication) (similar).

Nonetheless, even if we were to overlook Maloy's inadequate briefing, her cursory reference to the second theory of murder reflects a misguided attack. Maloy suggests that there was insufficient evidence that she knew her actions were clearly dangerous to human life, but the State was not required to prove that she knew or intended for her actions to be clearly dangerous to human life. Rather, the State was

6

required to prove that Maloy intended to commit serious bodily injury and that her actions were, as a matter of objective fact, clearly dangerous to human life. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (explaining that "the only *mens rea* specified in Section 19.02(b)(2) is the intent to cause serious bodily injury and the statute does not add a culpable mental state to the conduct that caused the death [as] murder . . . is a 'result' crime"); *Lugo-Lugo v. State*, 650 S.W.2d 72, 81–82 (Tex. Crim. App. 1983) (op. on reh'g) (recognizing that murder statute "requires that the act intended to cause serious bodily injury be objectively clearly dangerous to human life" and that the statute "focuses the mental state of the individual on the particular result and not on the conduct that causes death" (emphasis removed)). Maloy does not dispute the sufficiency of the evidence to prove these two facts; indeed, Maloy has effectively conceded both of them.

At trial, Maloy conceded that she was angry with Felicia, that she had intended to "hurt" her, that she knew a knife was dangerous, and that she had used the knife to stab Felicia multiple times.[7] *See* Tex. Penal Code Ann. § 1.07(46) (defining "[s]erious

---

[7]Maloy's trial counsel told the jury that Maloy was "angry" about her cell-phone plan so she "decide[d] to grab a knife . . . [and] hurt the person" responsible. Counsel compared Maloy's mental capacity to that of a seven-year-old child, arguing that a child "would know that if you take a knife and you stab someone in the stomach, in the heart, in the throat, you're going to kill them" but would not realize that "if you stab somebody in the thigh, you'll kill them." Maloy's appellate counsel repeats similar statements. In denying that Maloy had the intent to kill, her appellate counsel emphasizes that she was mimicking the "violence" that she had witnessed when "her father cut her mother."

bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ"); *Litoiu v. State*, No. 13-13-00489-CR, 2015 WL 4593740, at *3 (Tex. App.—Corpus Christi–Edinburg July 30, 2015, pet. ref'd) (mem. op., not designated for publication) (recognizing that "[s]tabbing an individual is an act clearly dangerous to human life" and holding evidence sufficient to support murder conviction when defendant "admitted that he intended to stab [the victim]" but claimed "that he only meant to 'hurt' her"). The jury found that the knife was used as a deadly weapon, and on appeal, Maloy does not challenge that finding.[8] *See Gipson v. State*, No. 09-19-00275-CR, 2021 WL 3743838, at *2–4 (Tex. App.—Beaumont Aug. 25, 2021, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to show defendant's intent to cause victim's death in part because defendant admitted stabbing victim with a knife and he did not challenge finding that knife was deadly weapon).

So even if we were to put aside Maloy's inadequate briefing, her sufficiency challenge would fail. For both reasons, we overrule Maloy's first issue.

---

[8]Maloy emphasizes that she could not have "know[n] how deep to cut to get the femoral vein." But this again misunderstands what the State was required to prove. The relevant issue was not whether Maloy intended to cut the femoral vein but whether her repeated stabbing of Felicia—in the vicinity of the femoral vein and elsewhere—was clearly dangerous to human life.

**B. Punishment**

Maloy next argues that there was factually insufficient evidence to support her 50-year sentence, which she describes as "excessive" and "unjust." But as we have repeatedly held, "the factual sufficiency standard of review does not apply to complaints about the length of a sentence, and such complaints must be preserved at trial for us to consider them on appeal." *Arnold v. State*, No. 02-23-00128-CR, 2023 WL 8940397, at *6 & n.21 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.) (mem. op., not designated for publication)[9] (citing *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013)); *see Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd).

Maloy's complaint about the alleged excessiveness of her 50-year sentence was not raised at the time her sentence was imposed, nor did she present the issue in a

---

[9]Maloy's appellate counsel also represented the defendant in *Arnold*. *See Arnold*, 2023 WL 8940397, at *1. And in *Arnold,* as here, the defendant argued on appeal that the evidence was factually insufficient to support the length of his sentence. *See id.* at *6 & n.21. When we rejected this argument, we explained that the factual sufficiency standard did not apply to complaints about the length of a defendant's sentence, we noted that such complaints required preservation, and we called out the defendant's counsel for relying on outdated case law. *Id.* Yet, just six months after *Arnold*, counsel filed a brief in this case presenting a similar factual sufficiency challenge and citing to the same outdated case law.

We warn counsel that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal" and that she has an ethical obligation to disclose "directly adverse authority" to the position she takes on appeal. Tex. Disciplinary Rules Prof'l Conduct R. 3.03 cmt. 3, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

motion for new trial. *See Boyd v. State*, No. 02-20-00116-CR, 2022 WL 188331, at *5 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (mem. op., not designated for publication) (holding appellant failed to preserve disproportionate-sentence complaint by not objecting at sentencing or raising issue in motion for new trial); *Kim*, 283 S.W.3d at 475 (similar). Maloy therefore failed to preserve her challenge to the length of her sentence, and we overrule her second issue.

## III. Conclusion

Having overruled both of Maloy's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 31, 2024